UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ROBERT TASSIN, JR.                          CIVIL ACTION

VERSUS                                      NO: 05-0143

BURL CAIN, WARDEN                           SECTION: "J"


## ORDER AND REASONS

The petitioner, Robert Tassin, Jr., filed this action under 28 U.S.C. § 2254 challenging a May 8, 1987 conviction for first degree murder and subsequent sentence of death.  Because the Court has found the record to be sufficient, no evidentiary hearing is required.  After an exhaustive examination of the record and the law, the Court finds that the petitioner is entitled to relief.

**PROCEDURAL HISTORY**

Robert Tassin, Jr. ("Petitioner") is a death row inmate currently being held at the Louisiana State Penitentiary in Angola, Louisiana.  Petitioner was convicted of first degree murder on May 8, 1987 in the Twenty-Fourth Judicial District Court in Jefferson Parish and sentenced to death.  On direct appeal, the Louisiana Supreme Court affirmed the conviction and sentence.[1]  Petitioner then filed an application for post-conviction relief in State court.  The State district court granted Petitioner an evidentiary hearing.  On August 5, 1994, the State court denied Petitioner's claims.  Application for writ of review to the Louisiana Supreme Court was denied without reasons on December 8, 1995.  A motion for reconsideration to the Louisiana Supreme Court was denied on January 26, 1995.

Petitioner filed his first federal Petition for Habeas Corpus on April 23, 1996, which was subsequently denied without prejudice to allow Petitioner to exhaust a newly discovered claim in State court.  On January 6, 1997, Petitioner filed a successor state post-conviction petition on the new claim.  Following a November 19, 1998 hearing, the State court denied Petitioner's successor state post-conviction claim.  Petitioner's application for writ of review to the Louisiana Supreme Court was denied without opinion on October 1, 2004.  Currently before the Court

---

[1] *State v. Tassin*, 536 So. 2d 402 (La. 1988).

is Petitioner's second federal Petition for Writ of Habeas
Corpus.

## BACKGROUND

Petitioner was indicted by a Jefferson Parish Grand Jury
under La. Rev. Stat. § 14:30 for the first degree murder of
tugboat captain Edward Martin.  On the night of November 6, 1986,
Martin and his deckhand, Wayne Stagner, met 19-year-old Shelia
Mills at the Shady Lady Lounge in Marrero, Louisiana.  Around
midnight, after hours of drinking alcohol, the three drove
together to a small bar to locate a drug source from whom they
could buy cocaine.  Failing to locate the source, Mills suggested
that they visit the residence of her neighbors, Petitioner and
his wife Georgina Tassin.  Martin and Stagner waited in the car
while Mills entered the Tassin residence to attempt to buy
cocaine.  Petitioner informed Mills that he had no cocaine but
would sell his Dilaudid if she could obtain enough money from
Martin and Stagner to supply the entire group with Dilaudid.
Mills returned to the car where Martin agreed to provide Mills
with fifty-five dollars in exchange for sexual intercourse.
Mills reentered the house where she and the Tassins injected
Dilaudid.

There was differing testimony at trial as to the discussion
that took place between Mills and the Tassins while inside the

3

house.  Georgina Tassin testified that at that time a plan was devised to rob Martin and Stagner.[2]  Petitioner testified that the three merely discussed the drug transaction.[3]

Upon leaving the Tassins' house, Mills and the Tassins joined Martin and Stagner saying that they would all visit a drug source and then return to the Tassins' home.  The State maintained that the purpose of the trip was for Petitioner to obtain a gun with which to rob Martin and Stagner.[4]  Petitioner maintained it was to acquire syringes and drugs.[5]

On the return trip, Mills requested that Martin stop the car beneath the Lapalco Bridge in Harvey, Louisiana so that she could exit the car to vomit.  After Mills exited the car, Martin and Stagner remained in the front seat, and Petitioner and Georgina Tassin remained in the back seat.  According to the State's witnesses, Petitioner, without warning, drew a gun and began firing, killing Martin and wounding Stagner.[6]  According to the defense, Stagner attempted to rob Petitioner at gunpoint, Petitioner lunged for the gun and forced it away, and, when Stagner instructed Martin to get another gun, Petitioner shot wildly at the two men.[7]

---

[2] State Rec. Vol. 8 at 1506.
[3] State Rec. Vol. 10 at 1712-14.
[4] State Rec. Vol. 11 at 1886.
[5] State Rec. Vol. 10 at 1734.
[6] State Rec. Vol. 11 at 183.
[7] State Rec. Vol. 11 at 210-11.

4

Petitioner Robert Tassin, his wife Georgina Tassin, and Shelia Mills were charged with capital murder.  During Petitioner's trial Georgina Tassin waived her marital privilege and testified against her husband.  In return and pursuant to her plea agreement, Georgina Tassin's charge was reduced from first degree murder to armed robbery.  Armed robbery was punishable by up to 99 years,[8] while first degree murder was punishable by life in prison or death.[9]

Before trial, Petitioner specifically asked for disclosure of information in the State's possession concerning "[t]he existence and substance, and the manner of execution o[r] fulfillment, o[f] any promises, agreements, understandings, or arrangements, either oral or written, between the Government and any prosecution witness...or her attorneys...to recommend leniency in sentencing for any crime or crimes for which he or she is convicted."[10]  The State responded that there were none.[11] At trial, Petitioner's counsel questioned Georgina Tassin as to the potential bearing of her testimony on her sentence.[12] Georgina Tassin testified that she could receive a sentence of up to 99 years, that she did not know whether her testimony would affect her sentencing, and that no promises were made to her

[8] La. Rev. Stat. § 14:64(B) (1986).
[9] La. Rev. Stat. § 14:30(C) (1986).
[10] State Rec. Vol. 1 at 40.
[11] State Rec. Vol. 1 at 42.
[12] State Rec. Vol. 8 at 1535-36.

5

concerning her testimony.[13]  Georgina Tassin's testimony was
crucial to the State's case as it provided the only evidence of a
plan to commit armed robbery.  In closing arguments, the State
argued that Georgina Tassin was not motivated by her plea bargain
to corroborate the State's theory of the case because the 99-year
sentence she faced for armed robbery was tantamount to a life
sentence for first degree murder.  In summation the State argued:

> Does she have any reason to lie to anybody?  She faces up to
> ninety-nine years in jail for armed robbery.  Mr. DeLaup
> questioned her, were any deals made with you, Georgina,
> about how much time your going to do in jail?  She said,
> none. . . .  She knows where she's going to be.  She knows
> that only the judge can sentence her, and only the Judge can
> decide how much time she's going to get in jail.  So she had
> no reason to lie to anybody on the stand here today. . . .[14]

On rebuttal the State argued, "Mr. DeAgano started attacking
Georgina . . . .  He wants to make it look like Georgina got some
kind of deal.  You call five to ninety-nine years a deal"?[15]

In State post-conviction proceedings, Petitioner claimed
that during Georgina Tassin's plea bargaining the trial judge,
Judge Jacob Karno, represented to Georgina Tassin through her
attorney that she could expect to receive 10 years if she
testified, based on the consistency of her testimony. Petitioner
argued that the failure of the State to correct Georgina Tassin's
misleading testimony on this point violated his due process

---

[13] State Rec. Vol. 8 at 1536.
[14] State Rec. Vol. 11 at 1887.
[15] State Rec. Vol. 11 at 1934.

rights.   Petitioner compiled a large amount of evidence to
support this claim.  Georgina Tassin's attorney, Robert Pastor,
testified that he met with Judge Karno and Guy DeLaup, the State
prosecutor, to address his concern that Georgina Tassin could
still receive up to 99 years for armed robbery despite her
willingness to testify.[16]  Pastor testified that Judge Karno told
him that although he usually gave 15 to 20 years for such an
offense he would be willing to sentence Georgina Tassin to 10
years depending on the consistency of her testimony.[17]  Mills'
attorney, John Craft, testified that he recalled Pastor's exact
words after the conference with the prosecutor and the judge to
be "Judge Karno said Georgina is going to get 10 years."[18]
Georgina Tassin testified in post-conviction proceedings that
when she made her plea bargain she was told that she was looking
at 10 years based on the consistency of her testimony.[19]  In
post-conviction proceedings, she testified that when she
testified at Petitioner's trial that she faced 99 years for armed
robbery it was her understanding that she was going to receive 10
years.[20]  Petitioner presented a letter written by Georgina
Tassin to a friend in which she stated that she was looking at 10

---

[16] State Rec. Vol. 13 at 13.
[17] State Rec. Vol. 13 at 13-14.
[18] State Rec. Vol. 13 at 251.
[19] State Rec. Vol. 13 at 103.
[20] State Rec. Vol. 13 at 148.

years.[21]  Mills testified that her attorney urged her to plead to armed robbery based on the fact that Georgina Tassin would receive 10 years for making such a plea.[22]  Petitioner's trial counsel suspected that Georgina Tassin had negotiated some deal with the State, so he attempted, to no avail, to uncover the nature of her understanding with the State and Judge Karno through a discovery motion and in cross-examining Georgina Tassin.[23]  After all parties involved made strategic decisions based on the representations of Judge Karno, Georgina Tassin testified consistently with the State's theory and received the 10-year sentence she was told to expect.

In post-conviction proceedings, the State argued that Georgina Tassin's testimony was not false because no firm promise was made to her by the State or Judge Karno and that Petitioner was thus not denied due process.  The State post-conviction court agreed and denied Petitioner's claim based on a finding that Petitioner failed to present sufficient evidence that a promise was made to Georgina Tassin.[24]

---

[21] State Rec. Vol. 13 at 104-06.
[22] State Rec. Vol. 13 at 231-33.
[23] State Rec. Vol. 18 at 149-50.
[24] Reasons for Judgment, Hon. E.V. Richards, Aug. 5, 1994, Petitioner's Ex. 1 at 3; State's Opp. at 10.

**LEGAL STANDARDS**

**A.  The Antiterrorism and Effective Death Penalty Act**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), federal courts can grant habeas corpus relief when a State court decision is contrary to or involves an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d).  Determining whether a decision is contrary to federal law requires a distinct analysis from determining whether there was an unreasonable application of federal law. A State court decision is contrary to federal law when it applies a rule that contradicts one set forth by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Applying a standard other than that required by Supreme Court precedent, for example a higher burden of proof, is considered to be contrary to federal law under § 2254(d).  *Id*.  A State court decision represents an unreasonable application of federal law when it correctly identifies the legal principle but applies that principle to the facts in an objectively unreasonable manner.  *See Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  The question before this Court is whether the decision of the State post-conviction court is contrary to or represents an unreasonable application of federal law.

9

**B.   The Requirements of *Napue*, *Giglio*, and *Brady***

The Supreme Court has interpreted Fourteenth Amendment due process protections to require a new trial when convictions are obtained through material evidence known to be false by representatives of the State. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). This is true regardless of whether the State solicits false testimony or merely allows testimony which it knows to be false to go uncorrected. *Giglio*, 405 U.S. at 153; *Napue*, 360 U.S. at 269.  The rule extends to evidence going to the credibility of a witness when that witnesses's testimony is material to the case. *Giglio*, 405 U.S. at 154.  "Any understanding or agreement as to a future prosecution would be relevant to [the witness's] credibility and the jury [is] entitled to know of it."  *Id.* at 155.  In addition, when the prosecution has evidence favorable to a defendant in its possession it must produce that evidence. *Brady v. Maryland*, 373 U.S. 83 (1963).  The evidence need not be exculpatory; a constitutional violation also occurs when material impeachment evidence is withheld.  *U.S. v. Bagley*, 473 U.S. 667, 676-83 (1985).  The State's duties regarding favorable evidence are commonly referred to as the *Brady* rule.

10

## DISCUSSION

On appeal, Petitioner challenged his conviction obtained with Georgina Tassin's misleading testimony on the grounds that violated the Fourteenth Amendment.[25]   Petitioner argued that the State violated his right to due process by exploiting and not correcting Georgina Tassin's misleading testimony.   The State argued that the testimony was not technically false because no firm promise was made to Georgina Tassin, and therefore the State had no obligation to correct the testimony.   The State court adopted the State's framing of the issue and characterized Petitioner's argument in terms of a promise. The complete ruling of the State court on this matter is as follows:

> Tassin alleges that his wife, Georgina Tassin (Georgina) was promised a lenient sentence by the trial judge in return for her testimony against petitioner. Tassin further alleges that this arrangement was unknown to him.
>
> At the evidentiary hearing on this claim, the trial judge, Georgina, and Georgina's attorney all denied that such an arrangement was made.  Robert Tassin presented no convincing evidence to contradict the testimony of these individuals.  Accordingly, relief based on this claim is denied.[26]

_____

[25] Petitioner urges, in addition, the following grounds for relief: Prosecutorial Misconduct, Judicial Bias, Ineffective Assistance of Counsel, Refusal to Provide for the Defense of an Indigent Accused, Violation of the Confrontation Clause, Insufficient Evidence, Improper Jury Selection and Instructions, Improper Evidentiary Rulings, and the Unconstitutionality of Lethal Injection under the Eighth Amendment.

[26] Reasons for Judgment, Hon. E.V. Richards, Aug. 5, 1994, Pet.'s Ex. 1 at 3; State's Opp. at 10.

Before this Court, the State again argues that no promise
was made to Georgina Tassin that she would receive a specific
sentence.  Petitioner argues that by requiring a promise to have
been made, the State court applied a standard contrary to the
*Brady* rule.[27] Petitioner argues that federal law requires that
the courts determine whether the jury was placed under a
misconception by misleading material evidence that interfered
with the jury's ability to assess Georgina Tassin's credibility.
This Court agrees with Petitioner. The State court decision was
contrary to federal law because it applied a more stringent
standard than the one established by Supreme Court precedent.
Georgina Tassin's testimony was misleading and material. When the
correct standard is applied, Petitioner's conviction based upon
that testimony cannot stand.

**A.  State Court Applied a Standard Contrary to *Brady***

In both *Giglio* and *Napue*, the Supreme Court found due
process violations where witnesses falsely denied that they were
testifying in exchange for leniency.  *Giglio*, 405 U.S. at 155;
*Napue*, 360 U.S. at 272.  In the present case, the State court
denied Petitioner's claim because the evidence did not show that
Georgina Tassin was promised a lenient sentence by the trial
judge.  This Court presumes that the State court's finding of

---

[27] Because the Court finds Petitioner's first claim
dispositive, it does not reach the remaining claims.

12

fact was correct. *See* 28 U.S.C. § 2254(e).  However, the State's
understanding with Georgina Tassin, while perhaps not a firm
promise, nevertheless clearly falls within the scope of the *Brady*
rule.  The State was constitutionally required to reveal its deal
with the witness to the jury to prevent the jury from operating
under a misconception.  Georgina Tassin's credibility was
important, and "evidence of any understanding or agreement as to
a future prosecution would be relevant to h[er] credibility and
the jury was entitled to know of it." *Giglio*, 405 U.S. at 155.

    *Giglio* is concerned with any facts that would likely affect
the judgement of a jury.  *Giglio*, 405 U.S. at 154; *Napue*, 360
U.S. at 269.  *Giglio* is focused on the impact on the jury,
ensuring that juries are made aware of all facts that might
motivate a witness in giving testimony.  *Id.; see also United
States v. Barham*, 595 F.2d 231, 243 (5th Cir. 1979); *United
States v. Anderson*, 574 F.2d 134, 1356 (5th Cir. 1978); *Garrison
v. Maggio*, 540 F.2d 1271, 1276 (5th Cir. 1976).  "The
constitutional concerns address the realities of what might
induce a witness to testify falsely, and the jury is entitled to
consider those realities in assessing credibility." *Brown v.
Wainwright*, 785 F.2d 1457, 1465 (11th Cir. 1986).  In *Giglio* the
Supreme Court did not place the focus on technicalities and did
not require a promise hidden by perjury before due process
concerns are implicated.  Clearly, juries can be mislead in other

13

ways.  In fact, it is more important for credibility
determinations that a witness has been offered the possibility of
leniency, but <u>not</u> promised it, such that leniency depends on the
consistency of her testimony with the State's theory.  Courts
have long recognized this.

> Th[e] possibility of a reward gave [the Government's
> witnesses] a direct, personal stake in respondent's
> conviction. The fact that the stake was not guaranteed
> through a promise or binding contract, but was
> expressly contingent on the Government's satisfaction
> with the end result, served only to strengthen any
> incentive to testify falsely in order to secure a
> conviction. Moreover, the prosecutor disclosed
> affidavits that stated that [the witnesses] received no
> promises of reward in return for providing information
> in the affidavits implicating respondent in criminal
> activity. In fact, [the witnesses] signed the last of
> these affidavits the very day after they signed the ATF
> contracts. While the Government is technically correct
> that the blank contracts did not constitute a "promise
> of reward," the natural effect of these affidavits
> would be misleadingly to induce defense counsel to
> believe that [the witnesses] provided the information
> in the affidavits, and ultimately their testimony at
> trial recounting the same information, without any
> "inducements."

*U.S. v. Bagley*, 473 U.S. 667, 683 (1985).[28]

In *Brown v. Wainwright*, 785 F.2d 1457, 1467 (11th Cir.

---

[28] *See also Boone v. Patrick*, 541 F.2d 447, 451 (4th Cir.
1976) ("Rather than weakening the significance for credibility
purposes of an agreement of favorable treatment, tentativeness
may increase its relevancy"); *Campbell v. Reed*, 594 F.2d 4, 7-8
(4th Cir. 1979) ("[A] tentative promise of leniency might thus be
interpreted by a witness as contingent upon the nature of his
testimony. Thus, there would be greater incentive for the witness
to try to make his testimony pleasing to the prosecutor"); *U.S.
v. Curtis*, 380 F.3d 1311, 1316 (11th Cir. 2004) ("The fact that
[the witness] did not have an explicit, quid pro quo deal does
not undermine, and may have enhanced, his motivation to please
the government.")

1986), the Eleventh Circuit recognized that *Giglio* and *Napue* require habeas relief where a witness for the State testifies that he had made no agreements for immunity when in fact the State had offered him "favorable consideration." *Id*. at 1461. The court rejected the State's argument that the testimony was not false because there was no actual promise of leniency. *Id*. at 1464-65.  The court recognized that "'[t]he thrust of *Giglio* and its progeny has been to ensure that the jury knows the facts that might motivate a witness in giving testimony'" and the word "promise" is not "a word of art that must be specifically employed." *Id*.  "It is a constitution we deal with, not semantics." *Id*. at 1465.  Accordingly, instead of basing a decision on whether the witness had concealed a firm promise of leniency from the jury, the Eleventh Circuit based its decision on whether or not the testimony was material and misleading to the jury. *Id.*

This Court is not suggesting that the State court should have considered *Wainwright v. Brown* as binding precedent. The case is merely an example of the inquiry required under *Giglio* that the State court in this case failed to conduct.  Perjury about a firm promise would clearly be telling, but in the circumstances of this case a perfunctory finding that there was no promise does not ensure that the minimum constitutional requirements for a fair trial have been satisfied.  While Judge

15

Karno may not have promised to sentence Georgina Tassin to 10 years, he made representations to Georgina's counsel and the prosecutor that were firm enough for her to treat those representations as reliable.  Judge Karno conditioned his agreement to consider a 10-year sentence on the consistency of Georgina Tassin's testimony, encouraging her understanding that she was being asked to perform certain conduct in return for certain consideration.  The likelihood of a 10-year sentence was sufficient to lay to rest the concerns of her attorney and herself that she could face 99 years despite her willingness to testify favorably for the State.

Whether a firm promise or an assurance that a specific sentence would be considered, Georgina Tassin was offered "inducements" for her testimony of which the jury was not made aware.  The prospect of a 10-year sentence was in her mind as she testified against her husband, and it is with such influences that *Giglio* is concerned. Representations made to witnesses need not guarantee them a benefit in order to motivate their testimony, and *Giglio* does not require such a guarantee.  *See, e.g., Blanton v. Blackburn*, 494 F.Supp. 895, 899 (M.D. La. 1980) aff'd 654 F.2d 719 (5th Cir. 1981).  By requiring Petitioner to prove that Georgina Tassin lied about a firm promise, the State court applied a standard contrary to federal law.

16

**B.  Georgina Tassin's Testimony was Misleading**

Georgina Tassin testified that she could receive a sentence of up to 99 years, that she did not know whether her testimony would affect her sentencing, and that no promises were made to her concerning her testimony.  Despite the technical accuracy of these statements, a false impression was created in the jury. *Giglio* and *Napue* prohibit the State from obtaining convictions based on such false impressions. Georgina Tassin's testimony misled the jury to believe that waiving her marital privilege and testifying against her husband meant to her the difference between a potential life sentence and a potential 99-year sentence, as opposed to a potential life sentence and a likely 10-year sentence.  Georgina Tassin testified with the expectation that her testimony would result in a 10-year sentence.  That expectation was realized when she received precisely the sentence she was led to anticipate.  However, the jury was under the impression that she faced 99 years, and nothing was done to disabuse the jury of that misconception.  This situation falls squarely within the *Brady* rule.

Under the Fourteenth Amendment, "the defendant is entitled to a jury that is not laboring under a Government-sanctioned false impression of material evidence." *United States v. Barham*, 595 F.2d 231, 242 (5th Cir. 1979).  In Petitioner's case the State not only failed to correct the testimony, but exploited it

vigorously in closing argument to solidify a false impression in
the jury that Georgina Tassin was testifying against her husband
"without any 'inducements'". *U.S. v. Bagley*, 473 U.S. 667, 683
(1985).  Thus, the State not only failed to correct the
testimony, but actively participated in misleading the jury on
this point during closing arguments. This sort of capitalization
upon misleading testimony by the State clearly runs afoul of
*Napue* and *Giglio*. *See U.S. v. Sanfilippo*, 564 F.2d 176, 179 (5th
Cir. 1977).

In *United States v. Barham*, the United States Court of
Appeals for the Fifth Circuit recognized that *Giglio* does not
require a lie, but is implicated when testimony creates a false
impression by conveying "something other than the truth."  595
F.2d 231, 241 (5th Cir. 1979).  In *Barham*, three witnesses
accurately testified that neither the questioning attorney nor
anyone else in the jurisdiction had made them any promises, when
candid testimony would have revealed that a prosecutor in a
different jurisdiction had promised them leniency.  *Id*.  The
court recognized regarding one witness that "the jury...was in no
position to appreciate the limited scope of [the witness's]
truthful statement that he had received no promises from anyone
in the Northern District of Alabama.  The issue, of course, was
whether [the witness] figured to gain any personal benefit."  *Id*.
at 241.  The court was concerned that "in the context of the

18

jury's limited information the natural effect of the prosecutor's questions and [the witness's] truthful answers was to deny this." *Id*. The court found that "[t]he testimony heard by the jury, if not outright lies, certainly conveyed the false impression that none of these three witnesses had received any promises of leniency or other considerations [and] the Government . . . knew that its witnesses had conveyed to the jury something other than the truth." *Id*.[29]  As noted above, in *U.S. v. Bagley*, 473 U.S. 667, 683 (1985), the Supreme Court confirmed this understanding that a firm promise is not required under the *Brady* rule where a false impression is created, and is in fact less significant than a tentative agreement where impeaching credibility is concerned.

Similarly to *Barham*, Georgina Tassin's testimony left the jury with the impression that she did not "figure[] to gain a personal benefit." *Barham*, 595 F.2d at 241.  She represented that she was facing 99 years despite assurances by her attorney, pursuant to his understanding with Judge Karno and the State

---

[29]  *See also Blankenship v. Estelle*, 545 F.2d 510, 513 (5th Cir. 1977) ("Although in the instant case the testimony...may have been technically true, it left the erroneous impression ... [about] the absence of leniency as an inducement to testify. This court has recently made clear that we will not tolerate prosecutorial participation in technically correct, yet seriously misleading, testimony, which serves to conceal the existence of a deal with material witnesses"); *Blanton v. Blackburn*, 494 F.Supp. 895, 899 (M.D. La. 1980) *aff'd* 654 F.2d 719 (5th Cir. 1981)("The fact that the answer given [by the witness] may have been technically correct is not sufficient where the answer is incomplete").

prosecutor, that she would receive 10 years if she testified consistently.  When assessing Georgina Tassin's credibility in testifying against her husband, the jury was under the impression that, as a practical matter, Georgina Tassin stood to gain nothing.  That powerful misconception was far from the truth and easily qualifies as misleading testimony under *Giglio*.  The jury could not accurately assess the reliability of Georgina Tassin, the State's primary witness, under that misconception.

**C.  Testimony of Georgina Tassin was Material**

The taint of Georgina Tassin's misleading testimony requires a new trial only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.  *Bagley*, 473 U.S. at 682 (subsuming the varying standards engendered by *United States v. Agurs*, 427 U.S. 97 (1976)).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*  As noted above, the testimony need not bear on an element of the State's proof; testimony bearing on the credibility of a witness can certainly be material.  *Id.*  "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."  *Napue v. Illinois*, 360 U.S. 264, 269 (1958).

20

The State relied primarily on the testimony of Georgina Tassin and Wayne Stagner.  Petitioner testified on his own behalf.  Georgina Tassin and Stagner told a story that conflicted with the story told by Petitioner.  Georgina Tassin's testimony was the only evidence that Petitioner planned an armed robbery that eventually led to the killing.  In these situations, defendants are "entitled to a jury that, before deciding which story to credit, [is] truthfully apprised of any possible interest of *any* Government witness in testifying falsely." *Barham*, 595 F.2d at 243 (emphasis in original).  "The obvious conflict in the stories of the prosecution and defense witnesses enhances the importance of the credibility of the witnesses." *Blanton*, 494 F.Supp. at 898.

Petitioner's jury was not fully informed of the possible interests that motivated Georgina Tassin.  Weighing her story against Petitioner's, the jury was presented with a defendant testifying to save his life and a wife testifying against her husband with no apparent motivation other than that which she professed:  "to get the truth out in the open."[30]  The jury's inability to assess Georgina Tassin's credibility in light of her deal for potential leniency is sufficient to undermine confidence in the outcome of Petitioner's trial.

---

[30] State Rec. Vol. 8 at 1512.

21

**CONCLUSION**

As the foregoing analysis demonstrates, Petitioner is entitled to relief.  The State court, using a standard contrary to that established by the Supreme Court in *Giglio* and *Napue*, made a limited inquiry as to whether Georgina Tassin received a firm promise, the existence of which was directly denied in questioning.  The proper inquiry was whether Petitioner's conviction was obtained through material misleading evidence known to be misleading by representatives of the State.  Reviewed under the correct standard, Petitioner's conviction was obtained in violation of the United States Constitution and cannot stand.

Accordingly,

**IT IS ORDERED** that petitioner Robert Tassin's application for habeas relief should be and is hereby **GRANTED** on Petitioner's first claim;

**IT IS FURTHER ORDERED** that Petitioner's May 8, 1987 conviction for First Degree Murder is **VACATED**;

**IT IS FURTHER ORDERED** that the writ of habeas corpus will issue unless the State of Louisiana initiates retrial of the petitioner within 180 days after the entry of this order.

New Orleans, Louisiana, this 23rd day of March, 2007.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

22